IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LORAINE GUERRÍOS FLORES,

**Plaintiff**,

v.

S.M. MEDICAL SERVICES, C.S.P., *et al*

**Defendants**

**CIVIL NO.** 18-1594 (RAM)

## OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is codefendants' Dr. Carlo Hernández-Román and Puerto Rico Medical Defense Insurance Company's, (collectively, the "Appearing Defendants") *Motion for Summary Judgment*, accompanied by a *Statement of Uncontested Facts* and *Memorandum of Law in Support of Summary Judgment*. (Docket Nos. 55, 56 and 57). Having considered the parties' submissions in support and in opposition, the Court hereby **GRANTS** the Appearing Defendants' *Motion for Summary Judgment* for the reasons discussed below. (Docket No. 55).

### I. PROCEDURAL BACKGROUND

On August 23, 2018, plaintiff Loraine Guerríos-Flores ("Guerríos" or "Plaintiff") filed this medical malpractice action against Dr. William Soto-Avilés ("Dr. Soto"), Dr. Carlo Hernández-Román ("Dr. Hernández"), S.M. Medical Services, C.S.P, ("SMMS")

and Puerto Rico Medical Defense Insurance Company ("PRMDIC"), Dr. Soto and SMMS' insurer. (Docket No. 1 ¶¶ 2-3 & 5-9). On April 24, 2019, Plaintiff filed an *Amended Complaint* containing the same factual allegations but specifying that PRMDIC was *also* Dr. Hernández's insurer. (Docket No. 38 ¶ 9).

Guerríos alleges that on **June 27, 2014**, she experienced intense abdominal pain and sought treatment at the Toa Alta Diagnostic and Treatment Center (the "Toa Alta CDT" for its acronym in Spanish) that was operated by SMMS. Id. ¶¶ 5, 15-17. At the Toa Alta CDT, Dr. Hernández examined Plaintiff and ordered IV fluids and various tests. Id. ¶¶ 26-34. Plaintiff was subsequently evaluated by Dr. Soto, who prescribed several medications and ultimately discharged her. Id. ¶¶ 39-48. Plaintiff posits that her condition worsened and on **June 29, 2014**, she went to Doctor's Central Hospital in Manatí. Id. ¶ 55. That same day at Doctor's Center Hospital, Guerríos underwent an exploratory laparotomy,[1] which resulted in the surgeon removing Plaintiff's perforated appendix and performed a partial cecum removal and peritoneal lavage.[2] Id. ¶¶ 57-60. Plaintiff remained hospitalized until July 10, 2014. Id. ¶ 61.

---

[1] An exploratory laparotomy is a surgery that opens the abdomen with the purpose of examining the organs and structures in the abdomen, including the appendix. *See* Abdominal exploration, Mount Sinai, http://www.mountsinai.org/health-library/surgery/abdominal-exploration. (last visited April 6, 2020).

[2] "Diagnostic peritoneal lavage (DPL) is a highly accurate test for evaluating intraperitoneal hemorrhage or a ruptured hollow viscus." Jill S. Whitehouse and John A. Weigelt, *Diagnostic peritoneal lavage: a review of indications,*

Although Guerríos filed a federal *Complaint* in August of 2018 containing claims arising from the allegedly "negligent care received at the Toa Alta CDT on **6/27/14**," Plaintiff argues that her claims are not time barred for three reasons. Id. ¶ 76. First, Plaintiff indicates that she presented a timely lawsuit against SMMS and Dr. Soto in the Bayamón Superior Court on **June 26, 2015** (Civil No. DDP2015-0483), effectively tolling the statute of limitations in the case at bar. Id. Second, Guerríos argues that she timely moved to substitute PRMDIC for an unknown insurer codefendant in said lawsuit. Id. ¶ 77. Third, Plaintiff alleges that she was not aware that Dr. Hernández was liable until **June 6, 2018,** when a second expert witness issued a report concluding that Dr. Hernández had also been negligent. Id. ¶¶ 107-109.

Co-defendants Dr. Hernández and PRMDIC filed separate responses to the *Complaint*. (Docket Nos. 18 and 46, respectively). On July 18, 2019, said Codefendants filed the present joint *Motion for Summary Judgment*. (Docket No. 55). In their accompanying *Memorandum of Law in Support of Motion for Summary Judgment*, the Appearing Defendants allege that: (1) the claims against Dr. Hernández are time-barred; (2) Dr. Hernández did not commit medical malpractice and there is no causal relation; and (3) if Dr.

---

*technique and interpretation*, 17:13 Scand. J. Trauma Resusc. Emerg. Med. (2009), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2663535/.

Hernández is not liable, PRMDIC cannot be liable as his insurer. (Docket No. 57).

## II.  LEGAL STANDARD

A motion for summary judgment is governed by Fed. R. Civ. P. 56(a). Summary judgment is proper if the movant shows that (1) there is no genuine dispute as to any material fact and (2) they are entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." *Thompson v. Coca-Cola Co.,* 522 F.3d 168, 175 (1st Cir. 2008). A fact is considered material if it "may potentially 'affect the outcome of the suit under governing law.'" Albite v. Polytechnic Univ. of Puerto Rico, Inc., 5 F. Supp. 3d 191, 195 (D.P.R. 2014) (quoting Sands v. Ridefilm Corp., 212 F.3d 657, 660–661 (1st Cir. 2000)).

The moving party has "the initial burden of demonstrat[ing] the absence of a genuine issue of material fact with definite and competent evidence." Mercado-Reyes v. City of Angels, Inc., 320 F. Supp. 344, at 347 (D.P.R. 2018) (quotation omitted). The burden then shifts to the nonmovant, to present "competent evidence to rebut the motion." Bautista Cayman Asset Co. v. Terra II MC & P, Inc., 2020 WL 118592, at 6* (D.P.R. 2020) (quoting Méndez-Laboy v. Abbott Lab., 424 F.3d 35, 37 (1st Cir. 2005)). A nonmoving party

must show "that a trialworthy issue persists." <u>Paul v. Murphy</u>, 2020 WL 401129, at *3 (1st Cir. 2020) (quotation omitted).

While a court will draw all reasonable inferences in favor of the non-movant, it will disregard conclusory allegations, unsupported speculation and improbable inferences. *See* <u>Johnson v. Duxbury, Massachusetts</u>, 931 F.3d 102, 105 (1st Cir. 2019). Moreover, the existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." <u>Scott v. Harris</u>, 550 U.S. 372, 379 (2007) (quotation omitted). Hence, a court should review the record in its entirety and refrain from making credibility determinations or weighing the evidence. *See* <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 135 (2000).

In this District, summary judgment is also governed by Local Rule 56. *See* L. CV. R. 56(c). Per this Rule, an opposing party must "admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts." <u>Id.</u> Furthermore, unless the fact is admitted, the opposing party must support each denial or qualification with a record citation. <u>Id.</u>

Responses which "do not oppose the truth of the statement offered and are either irrelevant to the matter at hand, provide additional evidence not related to the fact in question and/or failed to contradict it" are insufficient to properly controvert

a material fact. Marina de Ponce, Inc. v. Fed. Deposit Ins. Corp., 2018 WL 1061441, at *2 (D.P.R. 2018); *see also*, Aztar Corp. v. N.Y. Entertainment, LLC, 15 F.Supp.2d 252, 254 n. 1 (E.D.N.Y. 1998), aff'd. 210 F.3d 354 (2d Cir. 2000) (noting that responses only averring a "lack of knowledge or information sufficient to either admit or deny [a fact]" did not create an issue of fact.)

Additionally, Local Rule 56(c) allows an opposing party to submit additional facts "in a separate section." L. CV. R. 56(c). Given that the plain language of Local Rule 56(c) specifically requires that any additional facts be stated in a separate section, parties are prohibited from incorporating numerous additional facts within their opposition. *See* Natal Pérez v. Oriental Bank & Trust, 291 F. Supp. 3d 215, 218-219 (D.P.R. 2018) (quoting Carreras v. Sajo, Garcia & Partners, 596 F.3d 25, 32 (1st Cir. 2010); Malave-Torres v. Cusido, 919 F.Supp. 2d 198, 207 (D.P.R. 2013)).

If a party opposing summary judgment fails to comply with the rigors that Local Rule 56(c) imposes, "a district court is free, in the exercise of its sound discretion, to accept the moving party's facts as stated." Caban Hernandez v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007). Thus, litigants ignore this rule at their peril. *See* Natal Pérez, 291 F. Supp. 3d at 219 (citations omitted).

### III. FINDINGS OF FACT

To make findings of fact, the Court analyzed Defendants'
*Statement of Uncontested Facts in Support of Motion for Summary
Judgment* ("*SUF*") (Docket No. 56), Plaintiff's *Statement of Facts
in Response* (Docket No. 65) and the pertinent exhibits in support
of said statements of facts.[3] After **only crediting material facts**
that are **properly supported by a record citation and
uncontroverted,** the Court makes the following findings of fact:

1. At all relevant times Dr. Hernández was, and remains, an
   individual duly licensed for the practice of medicine in
   the Commonwealth of Puerto Rico as an emergency room
   physician, with license number 12592. (Docket No. 56 ¶ 1).

2. On the date of the facts subject of this action, June 27,
   2014, Dr. Hernández rendered services as emergency room
   physician at the Diagnostic and Treatment Center of the
   Municipality of Toa Alta (the "Toa Alta CDT"). Id. ¶¶ 2
   and 4.

3. PRMDIC was Dr. Hernández's insurer at all material times,
   having issued to him policy number PP-51674 which provided
   coverage for medical incident claims with limits of
   $100,000 per incident and $300,000 in aggregate. Id. ¶ 2.

---

[3] The Court did not take into consideration Dr. Pablo Rodriguez's Expert Witness
Report (Docket No. 56-16). Said report is the subject of Plaintiff's pending
*Motion to Strike* (Docket No. 47) and was irrelevant for the Court's findings.
On the other hand, the Court did consider the certified translations filed at
Docket No. 73.

4. On June 27, 2014, Plaintiff received medical treatment at the Toa Alta CDT. Id. ¶ 4.

5. On June 26, 2015, Plaintiff filed suit against defendants S.M. Medical Services, C.S.P., Dr. William Soto Avilés and other unknown persons before the Court of First Instance of Puerto Rico, Bayamón Part, under Civil number DDP 2015-0483 ("the State Action"). Id. ¶ 5.

6. Dr. Hernández was not included as a named defendant in the Complaint filed in the State Action. Id. ¶ 6.

7. Defendant PRMDIC was not included in the Complaint filed in the State Action as insurer of Dr. Hernández. Id. ¶ 7.

8. In the State Action, plaintiff retained the services of Dr. Julio A. Albino-Vázquez ("Dr. Albino") as a medical expert. (Docket No. 56 ¶ 14).

9. Plaintiff obtained a medical record consisting of one (1) yellow page from the Toa Alta DTC and provided said page to her expert, Dr. Albino. (Docket No. 65 ¶ D-F).

10. On November 1, 2015, Dr. Albino rendered his expert report wherein he found only two persons liable for Plaintiff's damages: Dr. William Soto Avilés and SMMS. (Docket No. 56 ¶ 15).

11. On February 29, 2016, Dr. Soto submitted his Answer to Interrogatory and Request for Production of Documents. In his sworn answers, he identifies Dr. Hernández as one of

the physicians that evaluated Guerríos, (Docket Nos. 56 ¶¶
25-26; 73-5 ¶¶ 10-11, 15, 17).

12. On March 15, 2016, Plaintiff filed a "Motion Submitting
Amended Complaint" in the State Action requesting leave to
file an amended Complaint in order to, among other things,
include Dr. Hernández and PRMDIC as named party defendants.
(Docket Nos. 56 ¶ 9; 73-1)

13. In the "Motion Submitting Amended Complaint," Guerríos
alleged that the basis for said amendment was "data
developed in the discovery of evidence." (Docket Nos. 56 ¶
10; 73-1 ¶ 1).

14. The Amended Complaint in the State Court action included
Dr. Carlo Hernández and his insurer PRMDIC as new party
defendants. (Docket Nos. 56 ¶ 11; 73-2).

15. In the relevant portions of the Amended Complaint filed in
State Court, Plaintiff affirmatively alleged the
following:

> a) "On or about June 27, 2014, approximately at 5:00
> am plaintiff Loraine Guerríos Flores attended the
> Emergency Room of the Toa Alta Municipality CDT
> with a strong abdominal pain, vomits, fever and
> other clearly appendicitis symptoms." (Docket Nos.
> 56 ¶ 12; 73-2 ¶ 10).

b) Plaintiff "was attended at 7:00 a.m. by defendants Dr. William Soto Avilés and/or Dr. Carlo Hernández Román." (Docket Nos. 56 ¶ 12-13(a); 73-2 ¶ 12).

c) The "aforementioned doctors were negligent in not conducting a differential diagnosis of appendicitis to the plaintiff notwithstanding that she showed clear indicative symptoms of such illness since 5:00 in the morning when she arrived at the CDT." (Docket Nos. 56 ¶ 12-13(b); 73-2 ¶ 13).

d) "That said defendants departed from the minimal norms for knowledge and medical care in the diagnosis and treatment of appendicitis on the plaintiff, omitting conducting the necessary exams under the best practice of medicine standards." (Docket Nos. 56 ¶ 12(c); 73-2 ¶ 14).

e) Plaintiff's damages were caused by "the exclusive negligence of the defendants Dr. William Soto Avilés, Dr. Pedro Ramos Hiraldo and Dr. Carlo Hernández Román, as well as Dr. Pedro Badillo, all of whom acted for the economic benefit of their employer S.M. Medical Services, C.S.P. who is vicariously liable for said negligence." (Docket Nos. 56 ¶ 13; 73-2 ¶ 23).

16. On February 27, 2018, before the dismissal of the State
    Action and with the benefit of the complete medical record
    as well as the transcript of the medical notes from the
    answers to interrogatories and request for production by
    Dr. Soto, Plaintiff's first expert, Dr. Albino issued an
    Addendum to his initial report with exactly the same
    conclusions: that Dr. Soto and SMMS were the only
    responsible and liable parties for the damages alleged by
    Plaintiff. (Docket No. 56 ¶ 27).

17. Dr. Miranda-Aponte ("Dr. Miranda"), the second medical
    expert hired by Plaintiff for her case, is a medical
    general practitioner, with a certificate of emergency
    medicine specialist not by training but by the
    grandfather's clause and is not board certified. (Docket
    Nos. 56 ¶ 17; 56-8 at 3-4).

18. Dr. Miranda stated that he reviewed the entire medical
    record and identified that all the entries in the record
    made by Dr. Hernández are found at page 1. (Docket Nos.
    56 ¶ 18; 56-8 at 7-8).

19. Dr. Miranda also explained that at page 3 of the medical
    record, there is a nurse progress note in which Dr.
    Hernández's name is clearly stated and identified. (Docket
    No. 56 ¶ 19).

20. In his deposition, Dr. Miranda testified that the medical records state: the patient arrived at the Toa Alta CDT at around 6:57 AM on June 27, 2014 and by 7:15 AM had already been triaged and was initially evaluated by Dr. Hernández, who conducted a physical examination, ordered laboratories and prescribed medication for her symptoms. Furthermore, the record shows that at 10:10 a.m., Plaintiff was being evaluated by Dr. Soto, who took over her treatment. Furthermore, the records state that when Plaintiff was discharged her symptoms had improved and that the discharge note states that Guerríos was oriented that if she continued with pain or if the pain increased, she should go to a hospital or institution with the capacity of doing a CT Scan or sonogram. Id. ¶ 20-22; 56-8 at 22-4; 28.

21. Dr. Miranda stated that by 10:10 a.m. on the 27 of June 2014 Dr. Soto Aviles took over full responsibility of the healthcare and treatment of the Plaintiff. (Docket No. 56 ¶ 23).

## IV.  APPLICABLE LAW

The Puerto Rico Civil Code, which applies to this diversity case, establishes a **one-year statute of limitations** for tort actions, commencing once "the aggrieved person ha[s] knowledge" of the injury. P.R. Laws Ann. tit. 31, § 5298. *See also* Ramos-Baez v. Bossolo-Lopez, 240 F.3d 92, 93 (1st Cir. 2001). The Puerto Rico

Supreme Court "recognizes two types of knowledge" that will start this statute of limitations. Marcano Delaney v. Puerto Rico Children's Hosp., 261 F. Supp. 3d 235, 238-39 (D.P.R. 2016) (citations omitted). The one year-period begins when a plaintiff (1) has "**actual knowledge** of both the injury and of the identity of the person who caused it" **or** (2) "is deemed to be **on notice of her cause of action** if she is aware of certain facts that, with the **exercise of due diligence**, should lead her to acquire actual knowledge of her cause of action." Alejandro-Ortiz v. Puerto Rico Elec. Power Auth., 756 F.3d 23, 27 (1st Cir. 2014) (emphasis added) (citations omitted). Notice of the cause of action occurs "when there exist some outward or physical signs through which the aggrieved party may become aware and realize that [they have] suffered an injurious aftereffect, which when known becomes a damage even if at the time its full scope and extent cannot be weighed." Torres v. E.I. Dupont de Nemours & Co., 219 F.3d 13, 18-19 (1st Cir. 2000) (quotations omitted). Succinctly stated, "[t]he clock starts ticking 'when the injured party **knew or should have known of the injury and of the likely identity of the tortfeasor.'"** Lopez-Rivera v. Hosp. Auxilio Mutuo, Inc., 290 F. Supp. 3d 137, 143 (D.P.R. 2017) (emphasis added) (quoting Tokyo Marine & Fire Ins. Co. v. Perez & Cia., De Puerto Rico, Inc., 142 F.3d 1, 3 (1st Cir. 1998)). *see also* Corey-Lanuza v. Medic Emergency Specialties,

Inc., 229 F. Supp. 2d 92, 99 (D.P.R. 2002) ("Subjective reasonable diligence will determine the accrual date [of the claim].").

To determine when a plaintiff should have known of the injury and its author, the analysis focuses on whether plaintiff knew sufficient facts to establish "**reasonable likelihood**" of an injury or liability, **not** "**legal certainty**." Estate of Alicano Ayala v. Philip Morris, Inc., 263 F. Supp. 2d 311, 320 (D.P.R. 2003) (emphasis added). Hence, in ordinary circumstances, a plaintiff does not need to know "the exact name of the tortfeasor" to be deemed on notice. Kaiser v. Armstrong World Indus., Inc., 872 F.2d 512, 516 (1st Cir. 1989).

When a plaintiff is aware of sufficient facts to be put on notice of a potential tort claim, they must "pursue that claim with reasonable diligence, or risk being held to have relinquished [their] right to pursue it later, after the limitation period has run." Rodriguez-Suris v. Montesinos, 123 F.3d 10, 16 (1st Cir. 1997). "Similarly, **once a plaintiff is put on notice that someone** or some entity **is the cause of the injury, the plaintiff may not succeed in a late-filed claim by asserting ignorance about the precise identity of the tortfeasor**." Id.

When a plaintiff sues later than a year after the injury, that is beyond the statute of limitations, they bear the burden of proving that they "lacked the requisite 'knowledge' at the relevant times" despite exercising due diligence. Marcano Delaney, 261 F.

Supp. 3d at 238-39 (quoting <u>Alejandro-Ortiz</u>, 756 F.3d at 27).

However, "if a plaintiff's ignorance of an injury and its origin

was due to the plaintiff's own negligence or lack of care, then

the statute of limitation would not be tolled." <u>Rodriguez-Suris</u>,

123 F.3d at 15 (citing <u>Colon Prieto v. Geigel</u>, 115 P.R. Dec. 232,

----, 15 P.R. Offic. Trans. 313, 327-29 (1984)). *See also* <u>Melendez</u>

<u>Colon v. Rosado Sanchez</u>, 2019 WL 3940919, at *5 (D.P.R. 2019) ("The

Puerto Rico Supreme Court makes clear that a plaintiff may not

delay once he has become aware of an injury, even if at the time

its full scope and extent cannot be weighed.") (internal quotations

omitted).

The concept of due diligence "is an objective standard that

'has buried within it a normative question of how much diligence

should be expected of a reasonable lay person.'" <u>Estate of Alicano</u>

<u>Ayala</u>, 263 F. Supp. 2d at 317 (quoting <u>Villarini-Garcia v. Hosp.</u>

<u>Del Maestro, Inc.</u>, 8 F.3d 81, 84 (1st Cir. 1993)). *See also*

<u>Rodriguez-Suris</u>, 123 F.3d at 14 ("[P]laintiff's subjective

awareness is measured against the level of awareness that the

plaintiff, having been put on notice as to certain facts and having

exercised reasonable care regarding a potential claim, should have

acquired."). To exercise due diligence, a plaintiff must "promptly

assert their rights" and make "**active efforts to seek answers and**

**clarify doubts**," instead of merely waiting "for answers to fall

from the sky […] when faced with facts that create a reasonable

basis for concern about negligence." <u>Estate of Alicano Ayala</u>, 263 F. Supp. at 317 (emphasis added).

Generally, "the issues of due diligence and adequate knowledge are still ones for the jury **so long as the outcome is within the range where reasonable men and women can differ**." <u>Villarini-Garcia</u>, 8 F.3d at 87 (emphasis added). However, a court may make this determination when "the evidence is so one-sided as to compel a finding." <u>Rodriguez-Suris</u>, 123 F.3d at 14-15. If a defendant successfully shows that plaintiff "has not satisfied, or cannot satisfy [their] burden of proving lack of true knowledge (that is, lack of full awareness of all that need be known to preclude tolling), final judgment for the defendant on the ground of late filing is appropriate." <u>Id.</u> at 14. Further, when the determination of a plaintiff's diligence is no longer a question for the finder of fact, said issue does not preclude summary judgment. <u>Id.</u> at 17. (citations omitted). *See also* <u>J. Geils Band Employee Ben. Plan v. Smith Barney Shearson, Inc.</u>, 76 F.3d 1245, 1260 (1st Cir. 1996) (holding that although the issue of reasonable diligence is factually based, it may be determined as a matter of law on summary judgment when there is nothing on the record to support that a plaintiff was reasonably diligent).

## V.    ANALYSIS

It is undisputed that Plaintiff's claims arise from the medical treatment she received at the Toa Alta CDT on **June 27,**

**2014.** (Fact ¶ 4). According to Guerríos' allegations in the *Amended Complaint*, her pain continued after being discharged and on **June 29, 2014,** she underwent surgery to treat her perforated appendix. (Docket No. 38 ¶ 55-60). Pursuant to this timeline and assuming *arguendo* that negligence occurred, Plaintiff should have known that there was a reasonable likelihood of injury by treating physicians of the Toa Alta CDT on the date of her surgery, i.e. **June 29, 2014.** *See* Estate of Alicano Ayala, 263 F. Supp. 2d at 317. Accordingly, Guerríos filed a timely Complaint in the Bayamón Superior Court against Dr. Soto and SMMS on **June 26, 2015.** (Fact ¶ 5).

However, Plaintiff did not sue Dr. Hernández until **after** the one-year period following knowledge of the injury had elapsed. Under Puerto Rico law, "the statute of limitations must be tolled separately for each joint tortfeasor." Rivera-Carrasquillo v. Centro Ecuestre Madrigal, Inc., 812 F.3d 213, 217 (1st Cir. 2016) (citing Fraguada Bonilla v. Hospital Auxilio Mutuo, 186 P.R. Dec. 365 (2012)). Therefore, the question before the Court is whether a reasonable jury could conclude that Plaintiff, having exercised the required due diligence, did not acquire the requisite knowledge to identify Dr. Hernández within the statute of limitations. *See* Melendez Colon, 2019 WL 3940919, at *5.

In her *Complaint* before this Court, Plaintiff provides a detailed account of why she was unable to identify Dr. Hernández

as a tortfeasor until 2018. She alleges that despite requests, the Toa Alta CDT only provided a partial copy of her medical record at the time of her State Action. (Docket No. 1 ¶ 84). On **December 17, 2015** she sent an interrogatory and request for production of documents to both Dr. Soto and SMMS asking them to identify all the doctors that had treated her on June 27, 2014 at the Toa Alta CDT. Id. ¶ 91. Plaintiff claims that SMMS provided their answers on **January 19, 2017** and the complete medical record on **February 7, 2017**. Id. ¶ 98. Further, Plaintiff contends that she was not able to identify Dr. Hernández until her second expert witness issued a report on **February 27, 2018** concluding that Dr. Hernández was liable.

This District has previously held that "[o]btaining medical records is a routine part of the due diligence required in any medical malpractice investigation." Morales-Melecio v. United States, 2016 WL 4146089, at *1 (D.P.R. 2016). Therefore, "[b]arring exceptional circumstances—such as extreme delay by medical facilities—**the limitations clock will not wait until a plaintiff gathers the relevant medical records**." Id. (emphasis added). At first glance, SMMS's alleged failure to provide a complete copy of the medical records until 2017 would appear to be an "extreme delay." But a careful analysis of the complete record shows that no such exceptional circumstance exists in the present case. Although Plaintiff claims that the Toa Alta CDT only provided one

page of her medical record, instead of the complete report despite her requests, she did not provide an account of the measures she took to procure the totality of her record nor Toa Alta CDT's response. (Fact ¶ 9). Therefore, no extreme circumstances have been established with regards to the Toa Alta CDT. Likewise, regardless of SMMS's delayed response, pursuant to Plaintiff's own allegations, she did not send SMMS an interrogatory and request for production of documents until **December 17, 2015, well after the statute of limitations had already passed on June 29, 2015**. As discussed above, the one-year period is not tolled until Plaintiff gathers the relevant information.

Furthermore, Guerríos' contention that she could not identify Dr. Hernández as a liable party until **2018** is directly **contradicted by Plaintiff's previous Amended Complaint in State Court dated March 15, 2016**, in which she included Dr. Hernández as a Codefendant. (Fact ¶ 12). That Amended Complaint was filed more than **one year and eight months** after her visit to the Toa Alta CDT and subsequent surgery, *i.e.* beyond the statute of limitations. Pursuant to Puerto Rico law, Guerríos needed to show she was unable to identify Dr. Hernández within the one-year period despite exercising due diligence. In her Motion submitting the Amended Complaint in State Court, she states that she was able to identify Dr. Hernández because of "data developed in the discovery of evidence." (Fact ¶ 13). This cursory explanation does **not** describe

the diligent steps Plaintiff took to identify Dr. Hernández in a timely fashion. It also does not present extraordinary circumstances that could have prevented Plaintiff from making this identification for the one (1) year and eight (8) months that elapsed from the date she sought treatment at the Toa Alta CDT and the date she tendered the Amended Complaint to the State Court.

As in the case Corey Lanuza v. Medic Emergency Specialties, Inc., there is no dispute that Plaintiff "was aware of the purportedly negligent care rendered at the ER [here the Toa Alta CDT] as well as the particular physician responsible for [her] premature discharge." Corey Lanuza, 229 F. Supp. 2d at 100. She was only lacking the name of one of the two treating physicians. In Corey Lanuza, this District found that there was nothing in the record for them to conclude that it was somehow difficult to ascertain the name of the physician on duty on the date of the alleged malpractice. Id. Likewise, in the case at bar, there is no evidence that Plaintiff's delay in bringing a suit against Dr. Hernández was "attributable to some unusual difficulty in procuring" his name or that it was otherwise unobtainable within the one-year period. Kaiser, 872 F.2d at 518.

In light of Plaintiff's own contradictory explanations, it is clear that "[r]easonable men and women cannot differ on the statute of limitations inquiry here because Plaintiffs did not meet [her] burden to prove due diligence," neither at the state or federal

level. <u>Melendez Colon</u>, 2019 WL 3940919, at *5. Thus, judgment for codefendant Dr. Hernández on the grounds of being time-barred is appropriate. *See* <u>Rodriguez-Suris</u>, 123 F.3d at 14-15. The Court need not entertain Dr. Hernández's arguments as to causation or negligence.

## VI.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Appearing Defendants' *Motion for Summary Judgment* at Docket No. 55. Consequently, Plaintiff's claims against co-defendant Dr. Hernández and PRMDIC, exclusively in its capacity as Dr. Hernández's insurer, are **DISMISSED WITH PREJUDICE.** Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 7th day of April 2020.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge